**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| WESTCHESTER FIRE INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| *v.* | ) | NO. 11 CV 3473 |
| | ) | |
| SWEPORTS, LTD., UMF CORPORATION, GEORGE | ) | |
| CLARKE, CHRISTOPHER LEISNER, A. G. CHENELLE, | ) | |
| JOHN A. DORE, MICHAEL C. MOODY, MICHAEL J. | ) | |
| O'ROURKE, O'ROURKE, KATTEN & MOODY, | ) | |
| JOHN PERKAUS, and PERKAUS & FARLEY LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**AMENDED COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, WESTCHESTER FIRE INSURANCE COMPANY ("WF"), by and through its

attorneys, O'HAGAN SPENCER, LLC, as its Complaint for Declaratory Judgment against

Defendants SWEPORTS, LTD ("SWEPORTS"), UMF CORPORATION ("UMF"), GEORGE

CLARKE ("CLARKE"), CHRISTOPHER LEISNER ("LEISNER"), A. G. CHENELLE

("CHENELLE"), JOHN A. DORE ("DORE"), MICHAEL C. MOODY ("MOODY"),

MICHAEL J. O'ROURKE ("O'ROUKE"), O'ROURKE, KATTEN & MOODY ("O'ROURKE

LAW FIRM"), JOHN PERKAUS ("PERKAUS), and PERKAUS & FARLEY LLC ("PF"),

allege as follows:

**NATURE OF ACTION**

CLARKE is the principal of both UMF and SWEPORTS. CLARKE hired various law

firms to provide services to UMF and/or SWEPORTS. Instead of paying for these legal services,

CLARKE entered into written agreements with the firms which provided SWEPORT stock in

lieu of payment of these fees. CLARKE alleges that from August 2006 through April 2007

certain members of the firms, and others, committed various acts and omissions that were part of

an intentional plan to improperly seize control of SWEPORTS/UMF. Once the relationship between CLARKE and these firms had deteriorated, CLARKE initiated a series of actions that unilaterally advised the firms, and others, *inter alia*, that he would not be paying their fees and that he was rescinded the firms' stock interests. The firms objected to CLARKE'S actions and notified him of their disputes verbally, through emails, letters, and then initiated litigation over these disputes. CLARKE tendered notice of these disputes to WF under UMF's Business Management Policy. Based upon this tender, WF accepted the defense of these disputes under the UMF Policy. The UMF policy, however, does not cover SWEPORTS or SWEPORTS' directors or officers. CLARKE then purchased a policy for SWEPORTS. The disputes with the firms continued and when the disputes evolved into lawsuits, CLARKE tendered the lawsuits under both the UMF and SWEPORTS Policies. WF advised that SWEPORTS' Policy would not provide coverage for the disputes that CLARKE was aware of prior to the purchase of the SWEPORTS policy and that had previously tendered under the UMF policy. This declaratory judgment action seeks to have the Court conclude that: 1) no coverage exits for these matters under the SWEPORTS Policy; 2) a defense is not owed for matters where UMF is not a defendant; 3) in the PF action where UMF is a defendant, if even a defense is found to be owed, there is no indemnity coverage as the damages sought are not covered by the Policy.

## THE PARTIES

1. Plaintiff WF is an insurance company incorporated under the laws of New York, with its principal place of business in Roswell, Georgia. At all times relevant to this action, WF was an insurer duly licensed and authorized to conduct business in the State of Illinois.

2.      Defendant SWEPORTS is incorporated under the laws of Delaware, with its principal place of business at 340 Ridge Road, Wilmette, Illinois in Cook County, Illinois. SWEPORTS is the parent company and majority shareholder of defendant UMF.

3.      Defendant UMF is incorporated under the laws of Illinois, with its principal place of business at 340 Ridge Road, Wilmette, Illinois in Cook County, Illinois. UMF is majority owned by and a subsidiary of SWEPORTS.

4.      Upon information and belief, Defendant, CLARKE, is a foreign national currently residing in Wilmette, Illinois in Cook County. At all relevant times CLARKE was a majority shareholder of Defendants SWEPORTS and UMF, the chairman of both SWEPORTS and UMF, and the president of SWEPORTS.

5.      Upon information and belief, Defendant, LEISNER, is a resident of Cook County, Illinois. Upon information and belief, LEISNER was and/or is a director of UMF.

6.      Upon information and belief, Defendant MOODY is a resident of Cook County, Illinois.

7.      Upon information and belief, Defendant O'ROUKE is a resident of Cook County, Illinois

8.      Upon information and belief, Defendant O'ROURKE LAW FIRM is a law firm located and doing business in Cook County, Illinois. Upon information and belief the O'Rourke Law Firm is a partnership with all individual partners being residents of the state of Illinois.

9.      Upon information and belief, Defendant PERKAUS is a resident of Cook County, Illinois.

10.     Upon information and belief, Defendant PF is a law firm and Illinois Limited Liability Company.  Upon information and belief, all members of PF are residents of the state of Illinois.

## JURISDICTION AND VENUE

11.     Jurisdiction is based on 28 U.S.C. § 1332 as all defendants are of diverse citizenship from WF and the amount in controversy exceeds $75,000.

12.     Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(a) as some of the defendants reside in this district and the Underlying Lawsuits are pending in Cook County, Illinois.

## FACTS COMMON TO ALL COUNTS

### Facts Regarding Underlying Disputes

13.     In or around July 2006, CLARKE, on behalf of SWEPORTS, retained the law firms of O'Rourke, Katten & Moody ("OKM") and Perkaus & Farley ("PF") to represent SWEPORTS with respect to certain Investment Transactions (the "Sandbox Investment Proposals").  Michael O'Rourke ("O'Rourke") and Michael C. Moody ("Moody") of OKM, and John Perkaus ("Perkaus") of PF, were the attorneys who represented SWEPORTS.

14.     OKM and PF provided extensive legal services to SWEPORTS and CLARKE. However, SWEPORTS failed to pay OKM's and PF's legal fees.

15.     As a result, on December 31, 2006, CLARKE, as the majority shareholder and president/chairman of SWEPORTS, executed stock purchase agreements with OKM and PF that converted their outstanding receivables for legal fees into 1.25% of SWEPORTS' common stock.  ("OKM Stock Purchase Agreement" and "PF Stock Purchase Agreement").

16.     In connection with the Sandbox Investment Proposals, in November 2006, O'Rourke, Moody, Perkaus, John Dore ("Dore") and AG Chennelle ("Chennelle"), served as guarantors on a $500,000 loan to SWEPORTS in exchange for SWEPORTS common stock ("11/13/2006 Promissory Note").

17.     In November and December 2006, Dore, Moody and O'Rourke purchased additional stock, each thereby investing an additional $100,000 in SWEPORTS.

18.     According to the Underlying Lawsuits, Dore, O'Rourke and Perkaus were appointed to serve as officers of SWEPORTS and/or UMF in 2007.

19.     According to the Underlying Lawsuits, SWEPORTS and UMF began to experience financial difficulties as legal fees for UMF'S counsel (Sachnoff & Weaver) continued to mount and loans became due.  On February 27, 2007, Dore, Moody, O'Rourke, Perkaus, and Brian Hopcraft signed a Promissory Note ("2/27/07 Promissory Note") for $125,000 to UMF to pay the legal fees.   The note was guaranteed by SWEPORTS and secured by all assets of SWEPORTS including "all intellectual Property rights."

20.     According to the Underlying Lawsuits, CLARKE expressed serious objections to the actions of O'Rourke, Moody, Perkaus, and Dore.  Further, CLARKE expressed his serious objections to other parties' intentions to approve the Sandbox Investment Proposals.  As a result of these serious disagreements, the relationships between CLARKE and O'Rourke, Moody, Perkaus and Dore rapidly deteriorated.

21.     Accordingly to the Underlying Lawsuits, on or about March 20, 2007, the boards for SWEPORTS and UMF met and purported to approve the pending Sandbox Investment Proposal over the strenuous objection of CLARKE and his vote against the Sandbox Proposal. CLARKE asserted that these efforts were in furtherance of an alleged "illegal scheme" and

"efforts to misappropriate control of SWEPORTS and UMF" to compel both companies to approve and implement the Sandbox Proposal over his objections.

22.     On March 23, 2007, OKM wrote to SWEPORTS asserting that, although $120,000 in past legal bills had been converted into SWEPORTS' stock, OKM was owed over $200,000 in additional legal fees for its services provided to SWEPORTS.

23.     Soon thereafter, on or about March 30, 2007, CLARKE unilaterally effected an Informal Action in Lieu of a Special Meeting of the Shareholders of SWEPORTS ("3/30/2007 Informal Action"), that, *inter alia*, asserted that O'Rourke had not been duly elected to the board of UMF, and therefore, his vote in favor of the Sandbox Proposal was improperly counted, such that the Sandbox Proposal had not been properly approved.

24.     The 3/30/07 Informal Action by CLARKE further set forth that OKM "has demanded payment" for legal work concerning the Sandbox Proposals and other matters that were negligently performed, not performed in the best interest of [UMF] or its shareholders, and in breach of [OKM's] fiduciary duties to [UMF] and its shareholders" and therefore CLARKE had unilaterally determined that "the value of any invoices or demand for payment alleged or asserted by [OKM] is zero; [and] that no claims for services by [OKM] has or could be deemed to constitute any consideration for any of the company's stock, and that [UMF]…shall not…exchange any stock in consideration of any such demand or claim by [OKM]."

25.     CLARKE's 3/30/2007 Informal Action set forth that it terminated all agreements between SWEPORTS and PF/OKM, and sought to nullify PF/OKM's stock interests that were granted in lieu of payment for legal services. The 3/30/07 Informal Action also purported to repudiate the rights of OKM/PF as shareholders of SWEPORTS and alleged that OKM/PF's actions were in breach of the law firm's fiduciary duties, such that the firms would be

responsible in part for damage to SWEPORTS based upon the firms' acts and omissions, including damage that would result from the Sandbox Proposals.

26.     On April 1, 2007, CLARKE sent correspondence directly to O'Rourke contesting his position as a director of UMF, and requested that O'Rourke "place OKM's insurance carrier on notice of this claim" that has "caused both corporations to incur and/or to be exposed to significant injury."

27.     On April 2, 2007, Perkaus, sent correspondence to CLARKE, which responded to the 3/30/2007 Informal Action ("Perkaus 4/2/2007 Letter") (Attached hereto as Exhibit A).  In this letter, Perkaus asserted that he had been "duly appointed as Secretary of SWEPORTS by appointment and unanimous vote of the Board, including [CLARKE]", and requested that CLARKE recognize "the legitimacy of that appointment."  Perkaus asserted that the 3/30/2007 Informal Action was "invalid and void," and stated that "[m]ost disconcerting is your disingenuous reliance upon Delaware General Corporate Law in your desperate attempt to remove Messrs. Dore and O'Rourke from the board."   The Perkaus letter ended with the warning that "[a]ny attempts by you to enforce the provisions contained therein will be met with appropriate corporate and legal actions."

28.     On April 2, 2007, Dore sent an email to CLARKE ("Dore 4/2/2007 Email") (attached hereto as Exhibit B), confirming their telephone call and advising that he [Dore] has been "unable to connect with [his] attorney,….about the proposed agreement you [CLARKE] gave me."  Dore alleged that CLARKE and SWEPORTS had "stiffed" him on his pay, and asked CLARKE to discuss severance and back pay.

29.     The same day, CLARKE sent an email in response to Dore's 4/2/2007 email, disputing Dore's salary and advising Dore that his pay would be reduced from $100,000 to $50,000.

30.     In response, on April 3, 2007, Dore sent correspondence to CLARKE that stated:

> "I would prefer that you leave me out of the fight between you and Mike [O'Rourke]. Naming me in a lawsuit does not improve your case. It will merely drive up the costs for both of us. You can always name me later, if you think it is necessary."

31.     On April 7, 2007, CLARKE sent correspondence to Moody asserting that "what was done and attempted was nothing short of a well orchestrated scheme to misappropriate the assets of SWEPORTS and UMF Corporation", sought to "discuss a possible resolution of the current situation", and advised that he had …." no interest in unnecessary litigation."

32.     On April 26, 2007, CLARKE received correspondence from Henry Proesel (a purported shareholder of SWEPORTS) which stated, *inter alia,* that "[i]t appears I have purchased a lawsuit rather than an investment."

33.     After further actions by CLARKE and efforts to resolve these disputes failed, the Underlying Lawsuits were filed by Dore, OKM, PF and others. These suits allege, *inter alia*, that the actions initiated and pursued by CLARKE were unjustified, malicious, undertaken for his own gain as well as in furtherance of his scheme to interfere and avoid the various contracts that he had entered into.

**Tender of Claims under the UMF Policy**

34.     WF issued a Business and Management Indemnity Policy to UMF, bearing policy number BMI20031914, with a policy period of May 23, 2006 to May 23, 2007 ("UMF Policy") (Attached hereto as Exhibit C).

35.     On April 11, 2007, during the UMF Policy Period, CLARKE tendered to WF notice of these disputes.  WF agreed to defend these actions, pursuant to various reservations.

**SWEPORTS Application for coverage**

36.     On May 4, 2007, SWEPORTS submitted an insurance application ("Sweports Application") (attached hereto as Exhibit D) to WF.  Based upon the representations in the Sweports Application, WF issued a Business and Management Indemnity Policy to SWEPORTS bearing policy number BMI20043288, with a Policy Period of May 22, 2007 to May 22, 2008 (attached hereto as Exhibit E).  The Sweports Application did not indicate that UMF was a subsidiary of SWEPORTS, did not advise of any of the above disputes, and did not advise that any of these disputes had already been tendered to WF under UMF's policy.

**The Underlying Lawsuits**

37.     On June 7, 2007, the lawsuit, *O'Rourke Katten & Moody, an Illinois Partnership v. SWEPORTS, Ltd. and George CLARKE* (Court No. 07 CH 15081) was filed in the Chancery Division of the Circuit Court of Cook County, Illinois ("OKM Lawsuit").  CLARKE was named as a defendant in the lawsuit, solely in his capacity as director or officer of SWEPORTS.  UMF was not named in the OKM Lawsuit.  The OKM Lawsuit asserted counts for Declaratory Relief and Injunction against SWEPORTS and CLARKE (related to the OKM Shareholder Agreement and the 3/30/2007 Informal Action), and alleged Breach of Contract against SWEPORTS regarding its failure to pay OKM's invoices.  A First Amended Complaint and Second Amended Complaint in the OKM Lawsuit were filed on April 11, 2008 and September 26, 2008.

38.     On June 8, 2007, the lawsuit, *Perkaus & Farley v. SWEPORTS, Ltd. and George CLARKE* (Court No. 07 CH 15165) was filed in the Chancery Division of the Circuit Court of Cook County, Illinois ("PF Lawsuit").  CLARKE was named as a defendant, solely in his

capacity as a director or officer of SWEPORTS. UMF was not named in the PF Lawsuit. The PF Lawsuit asserted counts for injunctive relief against SWEPORTS and CLARKE regarding the 3/30/2007 Informal Action, Declaratory Relief against SWEPORTS and CLARKE (with regard to the PF Shareholder Agreement), and Breach of Contract arising out of SWEPORTS' failure to pay PF's invoices for legal fees. The PF Lawsuit was amended on April 11, 2008, amended for a second time on July 31, 2008, and a third amended complaint ("PF-TAC") was filed on January 10, 2011. The PF-TAC named for the first time as defendants UMF and LEISNER.

39. On October 26, 2007, the lawsuit, *John A. Dore, Michael C. Moody and Michael O'Rourke v. SWEPORTS, Ltd. and George CLARKE* (Court No. 07 CH 12136) ("First Dore Lawsuit") was filed in the Chancery Division of the Circuit Court of Cook County, Illinois. On November 26, 2007, a second Dore lawsuit was also filed (Court No. 07 L 13237) which was consolidated with the First Dore Lawsuit on February 5, 2008 (the "Consolidated Dore Lawsuits"). The Consolidated Dore Lawsuits were amended on April 3, 2008 and July 10, 2008 and a Third Amended Complaint in the Consolidated Dore Lawsuits was filed on November 20, 2008.

40. On January 24, 2008, the lawsuit, *SWEPORTS, Ltd. by Andrew Chennelle, Fred Proesel, Thomas Murray, Michael Murray, Frank Gazzola v. UMF Corporation* (Court No. 08 L 00863) (hereafter the "Derivative Lawsuit"), was filed in the Law Division of the Circuit Court of Cook County, Illinois. Plaintiffs in the Derivative Lawsuit, as purported shareholders of SWEPORTS, sought recovery in connection with two loans issued by SWEPORTS to UMF. On May 29, 2008, the Derivative Lawsuit was voluntarily dismissed and has not been re-filed.

41. The OKM Lawsuit, the PF Lawsuit, the Consolidated Dore Lawsuits and the Derivative Lawsuit are sometimes collectively referred to herein as the "Underlying Lawsuits."

**Facts related to the Coverage Issues**

42.     CLARKE tendered Exhibits A and B to WF on or about April 11, 2007.  WF issued a coverage letter dated May 22, 2007 which advised that WF agreed to defend CLARKE with respect to these disputes, subject to various reservations.  Based upon the request of CLARKE, WF agreed to the retention of CLARKE'S chosen counsel to defend these matters.

43.     On May 4, 2007, CLARKE, on behalf of SWEPORTS submitted its insurance application ("Sweports Application") to WF.  WF issued a Policy to SWEPORTS (Exhibit D) which incepted on May 22, 2007.  The SWEPORTS Policy was issued based upon and in reliance on the facts and information provided by CLARKE on the Sweports Application.

44.     The UMF Policy expired on May 23, 2007.

45.     After each of the Underlying Lawsuits was filed, CLARKE supplemented his original tender to WF by tendering the Underlying Lawsuits.

46.     Upon tender of the Underlying Lawsuits, WF reviewed coverage under both the UMF and SWEPORTS policies and issued coverage letters under the UMF and SWEPORTS policies.

47.     On September 4, 2008, WF issued a supplemental coverage letter to UMF advising UMF that the Underlying Lawsuits arose out of facts, circumstances and the disputes involved in the Dore 4/2/2007 Email and the Perkaus 4/2/2007 Letter that had previously been tendered by CLARKE in April 2007 and therefore constitute "Interrelated Wrongful Acts".

48.     In the supplemental letter to UMF, subject to various reservations of rights, WF agreed to defend UMF and CLARKE, based upon the alleged allegations against CLARKE in his capacity as a UMF director and officer.  The supplemental letter also advised that the UMF Policy only provided coverage for UMF, and that SWEPORTS (the parent company of UMF)

was not an "Insured" under the UMF Policy. WF also advised UMF that there was no indemnity coverage available under the UMF Policy for the damages sought in the Underlying Lawsuits, as the suits involved amounts owed under various written contracts/agreements which were specifically excluded from coverage.

49.     In early 2009, WF determined that pursuant to the current pleadings it was clear that neither UMF nor CLARKE in his capacity as a director or officer of UMF were named defendants in any of the then pending Underlying Lawsuits as amended.

50.     On February 5, 2009, WF issued a letter to UMF to advise it had determined that neither UMF nor CLARKE (or any other individual) in their capacity as a director or officer were currently named as defendants in any of the then pending Underlying Lawsuits, as amended, and therefore, WF was withdrawing from the defense of the Underlying Lawsuits.

51.     Certain defense fees were tendered by CLARKE'S chosen counsel for defense fees incurred while WF had defended this matter. After review of the fees submitted, the amounts that were reasonable and in compliance with WF'S guidelines were funded.

52.     Approximately eleven months later, on January 13, 2010, CLARKE'S counsel tendered the PF-TAC. The PF-TAC added UMF, CLARKE (in his capacity as Director and Officer of UMF), and LEISNER as Defendants.

53.     On April 14, 2010, WF issued a letter advising that in light of the PF-TAC, WF would agree to defend UMF, CLARKE (in his capacity as director and officer of UMF), and LEISNER (in his capacity as director and officer of UMF) in the PF-TAC. The April 14, 2010 letter again advised that there was no indemnity coverage for the damages sought against UMF and CLARKE/LEISNER (in their capacities as a UMF director and officer) in the Underlying

Lawsuits, as they involved amounts owed to UMF shareholders under written contracts/agreements.

## POLICY TERMS AND CONDITIONS

54.    WF issued a Business Management Indemnity Policy to UMF bearing policy number BMI20031914 for the period May 23, 2006 to May 23, 2007.  (Exhibit C).

55.    WF issued a Business Management Indemnity Policy to SWEPORTS bearing the policy number BMI20043288 for the period May 22, 2007 to May 22, 2008.  (Exhibit E).

56.    The Policy language is identical for both policies.

## THE SWEPORTS APPLICATION

57.    On May 4, 2007, CLARKE, on behalf of SWEPORTS, completed the Sweports Application (Exhibit D). The Sweports Application asked whether any person or entity proposed for this insurance had been the subject of or involved in any litigation, administrative proceeding, demand letter, or formal or informal governmental investigation, . . . Sweports advised "**No**".

58.    The Application contained a Warranty statement that advised that Application was the basis of the contract and that the Insured warranted that the particulars and statement contained in the Application are the basis for the proposed Policy and that in the event there is any misstatement or untruth in the answers to the questions contained herein, Insurer has the right to exclude from coverage any claim based upon, arising out of or in connection with such misstatement or untruth.

59.    At the time he signed the Application, CLARKE was a central party in the various ongoing disputes listed above, however, the Sweports Application did not advise of any of these disputes, did not advise of the existence of the UMF Policy, and did not advise that UMF was in

13

any way related to SWEPORTS, and did not advise of the matters previously tendered under the UMF Policy.

## REQUESTS FOR DECLARATORY JUDGMENT SPECIFIC TO SWEPORTS POLICY

## COUNT I

**No Coverage for any of the  Defendants under the SWEPORTS Policy as the demand letters and subsequent Underlying Lawsuits are Claims Made Prior to the Inception of the SWEPORTS Policy**

60.     WF incorporates and re-alleges, as though fully set forth herein, Paragraphs 1 through 59 above, as if fully set forth under Count I.

61.     Pursuant to Section A.1. of the SWEPORTS policy, coverage is only available for Claims made and reported during the Policy Period.

62.     Pursuant to Section D.3. of the SWEPORTS Policy, all Claims arising out of the same "Wrongful Act" and all "Interrelated Wrongful Acts" shall be deemed to constitute a single Claim first made at the time the earliest Claim involving the same "Wrongful Act" or "Interrelated Wrongful Acts" is first made and reported.

63.     The Wrongful Acts alleged in the Underlying Lawsuits tendered under the SWEPORTS policy involve the Underlying Plaintiffs' purported scheme to control SWEPORTS/UMF and CLARKE'S efforts to avoid the agreements entered into with these Plaintiffs.  These acts constitute "Interrelated Wrongful Acts" that were first tendered to WF under the UMF policy on April 11, 2007.

WHEREFORE, WF respectfully requests this Honorable Court find and enter judgment, declaring that there is no defense or indemnity owed for SWEPORTS, and CLARKE and/or LEISNER in their capacity as directors or officers of SWEPORTS, for the Underlying Lawsuits

as they constitute Claims first made and reported prior to the inception of the SWEPORTS policy.

## COUNT II

**No Coverage Under the SWEPORTS Policy as the Claims were Tendered Under the UMF Policy Prior to the SWEPORTS Policy Period Inception Date.**

64.     WF incorporates and re-alleges, as though fully set forth herein, Paragraphs 1 through 63 above, as if fully set forth under Count II.

65.     Pursuant to the Exclusions in Section C.1.b., the SWEPORTS policy does not provide coverage for any Claim alleging or arising out of a "Wrongful Act," when such acts constitute "Interrelated Wrongful Acts" that had been previously tendered under a different/prior policy.

66.     The alleged "Wrongful Acts" contained in the Underlying Lawsuits have as a common nexus various facts, circumstances, events, transactions or series of facts and circumstance related to the alleged scheme to take over control of SWEPORTS/UMF and CLARKE'S efforts to thwart these efforts and repudiate the various agreements with these parties, and therefore, constitute "Interrelated Wrongful Acts" under the Policy. Notice was first tendered to WF under the UMF policy on April 11, 2007.

67.     Accordingly, the Underlying Lawsuits are all deemed to be Claims first made on April 11, 2007, and previously tendered under the UMF policy.

WHEREFORE, WF respectfully requests this Honorable Court find and enter judgment, declaring that there is no defense or indemnity coverage for SWEPORTS, CLARKE or LEISNER under Section C.1.b of the SWEPORTS policy, because the Underlying Lawsuits involve Interrelated Wrongful Acts that relate to Claims previously tendered under another policy.

## COUNT III

**No Coverage For any Defendant Under the SWEPORTS Policy as these disputes and the resultant demand letters were pending before the Continuity Date**

68.     WF incorporates and re-alleges, as though fully set forth herein, Paragraphs 1 through 67 above, as if fully set forth under Count III.

69.     Pursuant to Exclusion C.1.k., the SWEPORTS policy does not provide coverage for any Claim in any way involving "any prior…demand letter…pending" before the Continuity Date or in any way involving "any fact, circumstance, situation, transaction or event underlying or alleged in such… demand letter."

70.     Prior the May 22, 2007 Continuity Date of the SWEPORTS policy, CLARKE had already received demand letters, specifically, the Perkaus 4/2/2007 Letter and Dore 4/2/22007 Email.  Therefore, these demand letters were pending prior to the Continuity Date, and therefore are excluded from coverage pursuant to Exclusion C.1.k.

WHEREFORE, WF respectfully requests this Honorable Court find and enter judgment, declaring that there is no defense or indemnity coverage for SWEPORTS, CLARKE or LEISNER because these demand letters were pending before SWEPORTS' Continuity Date and therefore, Exclusion C.1.l. precludes coverage.

## COUNT IV

**No Coverage For Any Defendant Under the SWEPORTS Policy as the Defendants had knowledge of Facts and Allegations of Wrongful Acts that Could Reasonably Be Expected to Give Rise to the Underlying Lawsuits**

71.     WF incorporates and re-alleges, as though fully set forth herein, Paragraphs 1 through 70 above, as if fully set forth under Count IV.

72.     Prior the May 22, 2007 inception date of the SWEPORTS policy, CLARKE had knowledge of all of the facts and allegations involving the disputes.  Specifically, CLARKE was

aware of the alleged scheme to take over control of SWEPORTS/UMF, his efforts and acts to repudiate the various agreements, as well as the other parties' threats to initiate legal action to pursue their alleged rights.

73.     Accordingly, Defendants had knowledge of facts, circumstances and situations that could reasonably be expected to give rise to a Claim prior to the inception of the SWEPORTS policy on May 22, 2007.   Therefore, pursuant to Exclusion C.1.l. of the SWEPORTS policy, the Underlying Lawsuits are excluded from coverage.

WHEREFORE, WF respectfully requests this Honorable Court find and enter judgment, declaring that there is no defense or indemnity coverage for SWEPORTS, CLARKE or LEISNER for the Underlying Lawsuits, because the Defendants had knowledge of facts, circumstances or situations prior to the Continuity Date (5/22/2007) that could reasonably be expected to give rise to a Claim, and therefore, Exclusion C.1.l. precludes coverage.

## COUNT V

### No Coverage For any Defendant Under the SWEPORTS Policy Due to Material Misrepresentations or Omissions in the Policy Application

74.     WF incorporates and re-alleges, as though fully set forth herein, Paragraphs 1 through 73 above, as if fully set forth under Count V.

75.     On May 4, 2007, CLARKE signed the Sweports Application.

76.     In the Sweports Application, *inter alia*, Clarke was asked if any person or entity proposed for this insurance had been "the subject of or involved in any litigation, administrative proceeding, demand letter, or formal or informal governmental investigation…" to which CLARKE responded **"No".**

77.     In the Sweports Application, CLARKE failed to advise WF of his attempts to divest various individuals and entities, including all of the Claimants in the Underlying Lawsuit of their shareholder interests in SWEPORTS.

78.     In the Sweports Application, CLARKE failed to advise WF of the significant disputes and prior demand letters he had received including but not limited to the Perkaus 4/2/2007 Letter (Exhibit C), the Dore 4/2/2007 Email (Exhibit D), correspondence from shareholder Henry Proesel, or the April Informal Action(s) and significant disputes (as well as threatened litigation) resulting there from.

79.     The information that was either misrepresented and/or omitted by CLARKE was material to WF as it materially impacted the risk and hazard assumed by WF when it agreed to issue the SWEPORTS Policy.

80.     Section V.4. of the Sweports Application states that "in the event there is any misstatement or untruth in the answers to the questions contained herein, Insurer has the right to exclude from coverage any claim based upon, arising out of or in connection with such misstatement or untruth."

WHEREFORE, WF respectfully requests this Honorable Court find and enter judgment, declaring that there is no defense or indemnity coverage for SWEPORTS, CLARKE or LEISNER under the SWEPORTS policy for the Underlying Lawsuits, as CLARKE made material misrepresentations/omissions in the Sweports Application which precludes coverage.

**<u>REQUESTS FOR DECLARATORY JUDGMENT SPECIFIC TO UMF POLICY</u>**

**<u>COUNT VI</u>**

**No Coverage for any Claims made against SWEPORTS or
CLARKE (as SWEPORTS D&O) under the UMF Policy.**

18

81.     WF incorporates and re-alleges, as though fully set forth herein, Paragraphs 1 through 80 above, as if fully set forth under Count VI.

82.     Pursuant to Section A.1., the UMF policy only provides coverage for the Company, defined as the Parent Company and any Subsidiary, and the Directors and Officers of the Company.  Item A. of UMF'S Declarations Page identifies UMF as the Parent Company.

83.     SWEPORTS is the parent company of UMF, and therefore, no coverage is available for SWEPORTS under the UMF policy.

84.     Pursuant to Exclusion C.1.j., the UMF policy does not provide coverage for any Claims arising out of "Wrongful Acts" committed by any of its directors and officers, in their capacity as directors, officers, or board members of any other entity other than UMF.  Therefore, CLARKE in his capacity as a director and officer of SWEPORTS, or any other individual acting in his or her capacity as a director and/or officer of SWEPORTS, are not covered under the UMF policy.

WHEREFORE, WF respectfully requests this Honorable Court find and enter judgment, declaring that there is no coverage for SWEPORTS or CLARKE as a director and officer of SWEPORTS under the UMF Policy.

## COUNT VII

**No Coverage for any of the Defendants under the UMF Policy to the extent that they were not named as Defendants or not named in the capacity as a Director or Officer of UMF.**

85.     WF incorporates and re-alleges, as though fully set forth herein, Paragraphs 1 through 84 above, as if fully set forth under Count VII.

86.     UMF, CLARKE as a Director and Officer of UMF and LEISNER as a Director and Officer of UMF have never been named as defendants in the OKM Lawsuit.

87.     UMF, CLARKE as a Director and Officer of UMF and LEISNER as a Director and Officer of UMF have never been named as defendants in the Consolidated Dore Lawsuits.

88.     UMF, CLARKE as a Director and Officer of UMF and LEISNER as a Director and Officer of UMF were not named as defendants in the PF Lawsuit until January 13, 2010.

89.     On April 21, 2010, LEISNER was dismissed as a defendant from the PF Lawsuit.

90.     UMF was named in the Derivative Lawsuit, for which a defense was provided. However, that case was dismissed on May 29, 2008 and has not been re-filed.

WHEREFORE, WF respectfully requests that this Honorable Court find and enter judgment, declaring that WF owes no coverage to UMF and CLARKE and LEISNER under the UMF Policy to the extend UMF, CLARKE and LEISNER are not named as Defendants in any of the Underlying Lawsuits or are not named in their capacity as a Director or Officer of UMF.

## REQUESTS FOR DECLARATORY JUDGMENT APPLICABLE TO BOTH POLICIES

### COUNT VIII

**No Coverage for any Claims made against any of
the Defendants based upon the Insured vs. Insured Exclusion**

91.     WF incorporates and re-alleges, as though fully set forth herein, Paragraphs 1 through 90 above, as if fully set forth under Count VIII.

92.     Pursuant to Exclusion C.1.e. of the UMF and SWEPORTS policies, the policies do not provide coverage for Claims brought, or maintained by, on behalf of, in the right of, or at the direction of any Insured in any capacity.

93.     UMF, CLARKE and LEISNER allege that they are "Insureds" under the policies.

94.     In the Underlying Lawsuits it is alleged that Dore is or was a SWEPORTS Board Member, that O'Rourke is or was a UMF Board Member, that Perkaus is or was SWEPORTS' Corporate Secretary and that various of the other Underlying Plaintiffs are or were

UMF/SWEPORTS Board Members or employees. Therefore, to the extent that any of the Plaintiffs in the Underlying Lawsuits are deemed to be current or former directors or officers of UMF/SWEPORTS, there is no coverage for the Defendants under either the UMF or SWEPORTS policies based upon the Insured v. Insured Exclusion.

WHEREFORE, WF respectfully requests this Honorable Court to find and enter judgment, declaring that to the extent that any of the Plaintiffs in the Underlying Lawsuits are deemed to be current or former directors or officers of UMF and/or SWEPORTS, there is no coverage for the Defendants under either the UMF or SWEPORTS policies based upon the Insured v. Insured Exclusion.

## COUNT IX

**No Coverage for any Claims made against any of**
**the Defendants based upon the Fraud and Personal Gain Exclusion**

95.     WF incorporates and re-alleges, as though fully set forth herein, Paragraphs 1 through 94 above, as if fully set forth under Count IX.

96.     Pursuant to Exclusion C.1.f.i. of the SWEPORTS and UMF policies, WF does not provide coverage for any Claim based upon or any way involving any dishonest or deliberately fraudulent acts of an Insured.

97.     Pursuant to Exclusion C.1.f.ii. of the policies, WF does not provide coverage for any Claim based upon or any way involving the gaining of any profit or financial advantage to which a director or officer is not legally entitled.

98.     The Underlying Lawsuits assert that CLARKE dishonestly entered into agreements with the underlying Plaintiffs which he intended to breach from the outset, including the OKM Stock Purchase Agreement, the PF Stock Purchase Agreement, the Individual

Shareholder Agreements, the Retainer Agreements and various promissory notes. The Underlying Plaintiffs allege that CLARKE committed these acts for his own personal gain.

99.     Accordingly, pursuant to Exclusions C.1.f.i. and C.1.f.ii., the UMF Policy and SWEPORTS policies would not provide coverage for Claims based upon or in any way involving a dishonest or fraudulent act by CLARKE, or CLARKE'S gain of any profit or financial advantage to which he was not entitled.

WHEREFORE, WF respectfully requests this Honorable Court find and enter judgment, declaring that, pursuant to Exclusions C.1.f.i. and C.1.f.ii., there is no coverage for Claims based upon or in any way involving a dishonest or fraudulent act by CLARKE, or CLARKE'S gain of any profit or financial advantage to which he was not entitled.

## COUNT X

### No Coverage for any Claims made against any of the Defendants based upon the Intellectual Property Exclusion

100.     WF incorporates and re-alleges, as though fully set forth herein, Paragraphs 1 through 99 above, as if fully set forth under Count X.

101.     Pursuant to Exclusion C.2.b., the UMF and SWEPORTS policies do not provide coverage for any Claim based upon, arising out of or in any way involving the intellectual property of any products, technologies or services.

102.     The Underlying Lawsuits assert that the certain of the Plaintiffs were granted intellectual property in exchange for investment funds provided to SWEPORTS/UMF pursuant to certain agreements.

103.     Pursuant to the Exclusions in Section C.2.b., the UMF and SWEPORTS policies do not provide coverage for any Claims based upon, arising out of, or in any way involving intellectual property of any products, technologies or services.

WHEREFORE, WF respectly requests this Honorable Court find and enter judgment, declaring that, pursuant to the Exclusions in Section C.2.b. there is no coverage for Claims based upon, arising out of, or in any way involving intellectual property of any products, technologies or services.

## COUNT XI

### No Coverage for any Claims made against any of the Defendants based upon the Contract Exclusion

104.    WF incorporates and re-alleges, as though fully set forth herein, Paragraphs 1 through 103 above, as if fully set forth under Count XI.

105.    Pursuant to Exclusion C.2.a., the UMF and SWEPORTS policies do not provide coverage for any Claim based upon, arising out of or in any way involving the breach of any contract or agreement, except to the extent that SWEPORTS or UMF would have otherwise been liable in the absence of such contract or agreement.

106.    The Underlying Lawsuits arise out of CLARKE'S repudiation/breach of numerous agreements, including the OKM Stock Purchase Agreement, the PF Stock Purchase Agreement, the Individual Shareholder Agreements, the Intellectual Property Agreement, the Retainer Agreements and various promissory notes.

107.    Pursuant to Exclusion C.2.a., the policies do not provide coverage for Claims based upon, arising out of, or in any way involving the breach of any contract or agreement entered into by SWEPORTS or UMF.

WHEREFORE, WF respectly requests this Honorable Court find and enter judgment, declaring that, pursuant to Exclusion C.2.a., there is no coverage for Claims based upon, arising out of, or in any way involving the breach of any contract or agreement entered into by SWEPORTS or UMF.

23

## COUNT XII

**No Coverage for the Indemnity of any Claims made against the Defendants for amounts owed to Securities Holders of UMF and/or SWEPORTS.**

108.    WF incorporates and re-alleges, as though fully set forth herein, Paragraphs 1 through 107 above, as if fully set forth under Count XII.

109.    Pursuant to Section B.7.g, the UMF and SWEPORTS policies do not provide coverage for "any amount owed or paid to one or more securities holders of the Company under any written or express contract or agreement."

110.    The Underlying Lawsuits are filed by certain alleged shareholders of SWEPORTS and/or UMF, and seek amounts owed under numerous agreements, including the OKM Stock Purchase Agreement, the PF Stock Purchase Agreement, the Individual Shareholder Agreements, the Intellectual Property Agreement, the Retainer Agreements and various promissory notes.

111.    Pursuant to Section B.7., the policies do not provide coverage for any damages sought by the various shareholders who filed the Underlying Lawsuits for amounts owed to them under any contract or agreement.

WHEREFORE, WF respectfully requests this Honorable Court find and enter judgment, declaring that, pursuant to Section B.7., there is no coverage for damages sought by the various alleged shareholders who filed the Underlying Lawsuits for amounts owed to them under any contract or agreement.

**Jury Demand**

112.    Plaintiff demands trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, WF respectfully requests this Honorable Court find and enter judgment, declaring as follows:

1.      WHEREFORE, WF respectfully requests this Honorable Court find and enter judgment, declaring that there is no defense or indemnity owed for SWEPORTS, and CLARKE and/or LEISNER in their capacity as directors or officers of SWEPORTS, for the Underlying Lawsuits as they constitute Claims first made and reported prior to the inception of the SWEPORTS policy.

2.      WHEREFORE, WF respectfully requests this Honorable Court find and enter judgment, declaring that there is no defense or indemnity coverage for SWEPORTS, CLARKE or LEISNER under Section C.1.b of the SWEPORTS policy, because the Underlying Lawsuits involve Interrelated Wrongful Acts that relate to Claims previously tendered under another policy.

3.      WHEREFORE, WF respectfully requests this Honorable Court find and enter judgment, declaring that there is no defense or indemnity coverage for SWEPORTS, CLARKE or LEISNER because these demand letters were pending before SWEPORTS' Continuity Date and therefore, Exclusion C.1.l. precludes coverage.

4.      WHEREFORE, WF respectfully requests this Honorable Court find and enter judgment, declaring that there is no defense or indemnity coverage for SWEPORTS, CLARKE or LEISNER for the Underlying Lawsuits, because the Defendants had knowledge of facts, circumstances or situations prior to the Continuity Date (5/22/2007) that could reasonably be expected to give rise to a Claim, and therefore, Exclusion C.1.l. precludes coverage.

5.      WHEREFORE, WF respectfully requests this Honorable Court find and enter judgment, declaring that there is no defense or indemnity coverage for SWEPORTS, CLARKE or LEISNER under the SWEPORTS policy for the Underlying Lawsuits, as CLARKE made material misrepresentations or omissions in the Sweports Application which precludes coverage.

6.      WHEREFORE, WF respectfully requests this Honorable Court find and enter judgment, declaring that there is no coverage for SWEPORTS or CLARKE as a director and officer of SWEPORTS or any other individual acting in his or her capacity as a director and/or officer of SWEPORTS under the UMF Policy.

7.      WHEREFORE, WF respectfully requests this Honorable Court find and enter judgment, declaring that, pursuant to Section B.7., there is no coverage for damages sought by the various alleged shareholders who filed the Underlying Lawsuits for amounts owed to them under any contract or agreement.

8.      WHEREFORE, WF respectfully requests this Honorable Court to find and enter judgment, declaring that to the extent that any of the Plaintiffs in the Underlying Lawsuits are deemed to be current or former directors or officers of UMF and/or SWEPORTS, there is no coverage for the Defendants under either the UMF or SWEPORTS Policies based upon the Insured v. Insured Exclusion.

9.      WHEREFORE, WF respectfully requests this Honorable Court find and enter judgment, declaring that, pursuant to Exclusions C.1.f.i. and C.1.f.ii., there is no coverage for

Claims based upon or in any way involving a dishonest or fraudulent act by CLARKE, or CLARKE'S gain of any profit or financial advantage to which he was not entitled.

10.     WHEREFORE, WF respectfully requests this Honorable Court find and enter judgment, declaring that, pursuant to the Exclusions in Section C.2.b. there is no coverage for Claims based upon, arising out of, or in any way involving intellectual property of any products, technologies or services.

11.     WHEREFORE, WF respectfully requests this Honorable Court find and enter judgment, declaring that, pursuant to Exclusion C.2.a., there is no coverage for Claims based upon, arising out of, or in any way involving the breach of any contract or agreement entered into by SWEPORTS or UMF.

12.     WHEREFORE, WF respectfully requests this Honorable Court find and enter judgment, declaring that, pursuant to Section B.7., there is no coverage for damages sought by the various alleged shareholders who filed the Underlying Lawsuits for amounts owed to them under any contract or agreement.


Respectfully submitted,

O'HAGAN SPENCER, LLC


By:     /s/Kevin M. O'Hagan_____
        Attorneys for Plaintiff

Kevin M. O'Hagan (ARDC No. 6211446)
James W. Davidson (ARDC No. 6281542)
O'Hagan Spencer LLC
One E. Wacker Drive, Suite 3400
Chicago, IL 60602
PH:    312-422-6100
FX:    312-422-6110
kohagan@ohaganspencer.com
jdavidson@ohaganspencer.com